Filed 3/4/13  Secarea v. Regents of the University of Cal. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VALER V. SECAREA, JR., | |
| Plaintiff and Appellant, | G044478 |
| v. | (Super. Ct. No. 05CC10019) |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Valer V. Secarea, Jr., in pro per., for Plaintiff and Appellant.

Maranga Morgenstern, John F. Peterson; Greines, Martin, Stein & Richland, Martin Stein and Carolyn Oill for Defendants and Respondents Regents of the University of California, Kalyanam Shivkumar, M.D., and David Cesario, M.D.

Taylor Blessey and Barbara M. Reardon for Defendant and Respondent Charles Swerdlow, M.D.

Carroll, Kelly, Trotter, Franzen & McKenna, Mark V. Franzen, Dmitriy Cherepinskiy and David P. Pruett for Defendant and Respondent Irvine Regional Hospital and Medical Center.

Schmid & Voiles, Denise H. Greer, Susan Fox Dixon and Fredrick James for Defendants and Respondents Alan C. Schwartz, M.D., and Richard Swartzentruber, M.D.

\* \* \*

This wrongful death and survival action arises from the death of Nadine F. Secarea.[1] Plaintiff and appellant Valer V. Secarea, Jr., Nadine's husband, alleges defendants and respondents Charles Swerdlow, M.D., Kalyanam Shivkumar, M.D., David Cesario, M.D., and the Regents of the University of California[2] caused Nadine's death by performing a surgical procedure on her heart that included the experimental use of a temperature probe to prevent a rare, but usually fatal complication. According to Plaintiff, the UCLA Defendants performed the surgical procedure without Nadine's informed consent because they failed to disclose both the possibility this rare complication could develop and the experimental use of the temperature probe to prevent that complication. Plaintiff also alleges defendants and respondents Alan C. Schwartz, M.D., Richard Swartzentruber, M.D., and Irvine Regional Hospital and Medical Center (Irvine Regional) contributed to Nadine's death by failing to gather the necessary

---

[1] We refer to Nadine by her first name to avoid any confusion with plaintiff and appellant Valer V. Secarea, Jr., who we will refer to as Plaintiff. No disrespect is intended. (*Fazzi v. Klein* (2010) 190 Cal.App.4th 1280, 1282, fn. 1.)

[2] We will refer to the Regents of the University of California as Regents and Swerdlow, Shivkumar, Cesario, and the Regents collectively as the UCLA Defendants. We will refer to all respondents and defendants collectively as Defendants.

information and data to correctly diagnose and treat Nadine's rare complication when she arrived at Irvine Regional's emergency room.

This is Plaintiff's second appeal in this action. On the prior appeal, we affirmed a summary adjudication against Plaintiff on his wrongful death claim against the UCLA Defendants, but reversed summary adjudication against Plaintiff on his lack of informed consent claim against the UCLA Defendants. We also affirmed the trial court's ruling sustaining demurrers to Plaintiff's battery, fraud, and negligence claims against the UCLA Defendants that alleged they improperly performed medical experimentation on Nadine and improperly allowed Cesario to participate in Nadine's surgery as part of his "on the job training."

We affirmed the demurrers on the medical experimentation claims because the undisputed evidence presented on the UCLA Defendants' summary judgment motion established Nadine's procedure was not experimental or investigational, and therefore any error in sustaining the demurrers was harmless. Similarly, we affirmed the demurrer to the claim regarding Cesario's participation in the surgery because the undisputed evidence showed the UCLA Defendants performed Nadine's surgery within the applicable standard of care and therefore Cesario's participation did not cause Nadine any harm as a matter of law.

On this appeal, Plaintiff asks us to reconsider our prior decision on his medical experimentation claims and his claim regarding Cesario's participation in Nadine's surgery. Plaintiff also challenges several rulings the trial court made following remand, including (1) granting a motion by Plaintiff's attorney to withdraw as counsel of record; (2) granting a motion for a protective order that barred Plaintiff from conducting discovery regarding his medical experimentation claims; (3) granting Schwartz summary judgment; (4) denying Plaintiff's motion to continue trial; and (5) dismissing Plaintiff's remaining claims when he failed to appear for trial.

3

We affirm the trial court's summary judgment in Schwartz's favor and its judgment dismissing the claims against all other Defendants because (1) the law of the case doctrine prevents us from reconsidering our prior opinion concerning Plaintiff's medical experimentation claims and his claim regarding Cesario's participation in Nadine's surgery, and (2) Plaintiff failed to establish the trial court erred in any of the foregoing rulings.

I

FACTS AND PROCEDURAL HISTORY

A.    *Nadine's Medical Treatment*

Nadine suffered from cardiac arrhythmia, or an irregular heartbeat. She consulted with Swerdlow, a cardiologist and electrophysiologist, to discuss the possibility of treating her condition with a cardiac catheter ablation. This procedure involves inserting a wire catheter into a blood vessel and winding the catheter into the heart. Electrodes on the tip of the catheter measure the heart's electrical activity and determine the location of the "short circuit" that interrupts the heart's normal rhythms. Once doctors identify the area of the abnormal electrical activity, energy is applied to destroy a small amount of heart tissue. This causes lesions to form that halt the abnormal electrical disturbances and restore the heart's natural rhythm.

Swerdlow and Shivkumar, who often worked as a team, arranged to perform Nadine's procedure at UCLA Medical Center. On August 11, 2004, Swerdlow performed the procedure, assisted by Cesario. At that time, Cesario was an electrophysiology fellow who had graduated from medical school eight years earlier, and had completed an internship and cardiology residency. The doctors completed the procedure with no apparent complications. Nadine went home the following day with instructions to follow up with Swerdlow in one month.

4

On September 6, 2004, Nadine began experiencing visual disturbances along with tingling and numbness in her hands and arms. Plaintiff called 911, and an ambulance transported Nadine to Irvine Regional's emergency room. Swartzentruber, an emergency room physician at Irvine Regional, examined Nadine and concluded she had suffered a transient ischemic attack, sometimes referred to as a mini-stroke. Swartzentruber referred Nadine to Schwartz, an on-call internal medicine physician at Irvine Regional, for a consultation and evaluation. Schwartz admitted Nadine to Irvine Regional and transferred her to a telemetry unit for continuous electronic monitoring.

Nadine's condition continued to deteriorate as she suffered a drop in blood pressure and a decrease in her level of consciousness. Schwartz surmised Nadine had suffered a stroke affecting 80 to 90 percent of her cognitive abilities and probably would not regain consciousness. On September 12, 2004, Nadine's brain wave pattern showed she had suffered brain death, and Plaintiff consented to her removal from life support. Nadine died shortly thereafter. An autopsy revealed Nadine had died from the effects of an atrio-esophageal fistula, a rare, but usually fatal complication of the cardiac catheter ablation procedure.

B.    *The Trial Court Proceedings Before First Appeal*

Plaintiff sued Defendants in his own name and as Nadine's successor in interest, alleging the following causes of action: (1) wrongful death against all Defendants; (2) survival action for lack of informed consent against Swerdlow, Shivkumar, Cesario, and UCLA; (3) survival action for lack of informed consent based on patient abandonment against Swerdlow and Shivkumar; (4) survival action for battery based on "ghost surgery" against Swerdlow, Cesario, Shivkumar, and UCLA; (5) survival action for battery based on covert medical experimentations against Swerdlow, Shivkumar, Cesario, and UCLA; (6) survival and individual action for fraud based on "ghost surgery" against Swerdlow, Shivkumar, Cesario, and UCLA; (7) survival and

5

individual action for fraud based on medical experimentation against Swerdlow, Shivkumar, and UCLA; (8) survival action for negligence per se against Swerdlow, Shivkumar, Cesario, and UCLA; (9) product liability based on negligence against Swerdlow, Shivkumar, and UCLA; (10) survival action for strict products liability against Swerdlow, Shivkumar, and UCLA; and (11) survival action based on Code of Civil Procedure section 377.20 against all Defendants.[3]  (All statutory references shall be to the Code of Civil Procedure.)

Plaintiff's second amended complaint alleged several liability theories: (1) the UCLA Defendants failed to advise her of the potential for the atrio-esophageal fistula complication; (2) Nadine consented to a limited empirical pulmonary vein isolation (LEPVI) procedure, but the UCLA Defendants performed an unauthorized wide area circumferential or "Pappone Technique" procedure instead; (3) Nadine conditioned her consent upon Swerdlow and Shivkumar performing the surgery as a team, but Shivkumar left the operating room shortly after Nadine was placed under anesthesia; (4) Nadine conditioned her consent on only Swerdlow and Shivkumar performing the operation, but Swerdlow allowed Cesario to perform the procedure as part of his "on the

---

[3]      "Wrongful death is a statutorily created cause of action for pecuniary loss brought by heirs against a person who causes the death of another by a wrongful act or neglect.  It is original in nature and does not represent a right of action that the deceased would have had if the deceased had survived the injury.  [Citations.]  It is a cause of action for the heir who recovers for the pecuniary loss suffered on account of the death of the relative." (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 105 (*Jacoves*).)

A wrongful death claim is separate from a survival claim.  (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 819.)  A survival claim is the decedent's claim that survives to the estate under sections 377.20 and 377.30.  (*Adams v. Superior Court* (2011) 196 Cal.App.4th 71, 78-79.)  Damages in a survival action compensate for injuries the decedent suffered before death.  (§ 377.34.)  Damages in a wrongful death action, however, compensate the heirs for the loss they suffered.  (§ 377.60; *Corder v. Corder* (2007) 41 Cal.4th 644, 661 (*Corder*).)

job training"; (5) the UCLA Defendants employed an esophageal stethoscope — a temperature probe designed to assist anesthesiologists — to protect against the atrio-esophageal fistula complication, but the use of the probe for that purpose was experimental and required FDA approval, violated the Regents' own policies and procedures, and was done without Nadine's consent; (6) Swerdlow, Shivkumar, and Cesario failed to disclose to Nadine their research interest in using the esophageal stethoscope to prevent the atrio-esophageal complication; and (7) following Nadine's arrival at the emergency room, Irvine Regional, Schwartz, and Swartzentruber "failed to assemble the information and data needed to correctly diagnose and treat NADINE's critical condition."

In 2006, the trial court sustained without leave to amend Shivkumar's, Cesario's, and the Regent's demurrers to the fourth through 10th causes of action, and Swerdlow's demurrers to the third through 10th causes of action. The UCLA Defendants and Irvine Regional then filed summary judgment motions challenging Plaintiff's remaining causes of action. The trial court granted those motions and entered judgment in Defendants' favor on all causes of action, leaving only Plaintiff's claims against Schwartz and Swartzentruber.

C.    *The First Appeal*

On Plaintiff's appeal, our unpublished opinion affirmed the judgment in part and reversed it in part. (*Secarea v. Regents of the University of California* (Nov. 20, 2008, G037651) [nonpub. opn.] (*Secarea I*).) We reversed the trial court's summary judgment in Irvine Regional's favor, finding Irvine Regional failed to present sufficient evidence to show the actions by its nurses did not contribute to Nadine's death. (*Id.* at pp. 6-9.) On the UCLA Defendants' summary judgment motion, we affirmed the trial court's ruling granting summary adjudication on the first cause of action for wrongful death because the UCLA Defendants presented expert testimony concluding Nadine's

cardiac catheter ablation procedure was performed in a manner consistent with the standard of care and Plaintiff failed to present expert testimony creating a triable issue on that element of the claim. (*Id*. at pp. 10-13.) We reversed the trial court ruling granting the UCLA Defendants summary adjudication on the second cause of action for lack of informed consent because they failed to show they disclosed the potential for the atrio-esophageal fistula complication or that a reasonable person would have consented to the procedure even if they knew about the potential for that complication. (*Id*. at pp. 13-19.)

Our decision also affirmed the trial court's ruling sustaining the UCLA Defendants' demurrers to Plaintiff's third through 10th causes of action. We explained Plaintiff's multiple claims for battery, fraud, and negligence based on "ghost surgery" and "covert medical experimentation" failed because the evidence presented on summary judgment established (1) the UCLA Defendants performed Nadine's ablation procedure in a "competent and appropriate manner" and therefore did not cause her harm or injury; and (2) "the specific procedure performed on Nadine, including the use of an[] esophageal temperature probe, was not 'experimental or investigational' at the time of the operation." Because the evidence on summary judgment negated the causation and damages elements of these claims as a matter of law, we concluded any trial court error in sustaining the UCLA Defendants' demurrers to these claims was harmless.[4] (*Secarea I*, at pp. 20-23.)

D.      *The Trial Court Proceedings Following Remand*

After Plaintiff unsuccessfully sought review in both the California and United States Supreme Courts, we remanded the remaining claims to the trial court. All parties filed a joint status statement acknowledging the only claim remaining against the

---

[4]      In *Secarea I*, Plaintiff did not challenge the trial court's ruling sustaining the UCLA Defendants' demurrers to the product liability claims alleged as the ninth and 10th causes of action.

8

UCLA Defendants was the second cause of action for lack of informed consent and the only claim remaining against Irvine Regional, Schwartz, and Swartzentruber was the first cause of action for wrongful death. At the February 2010 status conference, the parties agreed on a deadline to produce the medical records, a schedule to amend the pleadings, an expert discovery schedule, and a September 20, 2010, trial date.

In March 2010, attorney Thomas E. Rockett III filed a motion to withdraw as Plaintiff's counsel of record, stating Plaintiff "has refused to follow the advice of counsel and has engaged in a course of conduct that clearly indicates a breakdown in communication and thus a breakdown in the attorney-client relationship." Plaintiff filed a lengthy opposition, acknowledging he refused to follow Rockett's advice to dismiss the action and claiming Rockett was trying to avoid responsibility for his numerous mistakes in handling Plaintiff's case. On May 7, 2010, the trial court conducted a hearing at which it granted Rockett's motion to be relieved as counsel. The court explained it was not inclined to continue the trial date "at this point" and emphasized Plaintiff should act promptly to either retain new counsel or prepare to try his case.

In June 2010, Swerdlow moved for a protective order to prevent Plaintiff from conducting discovery on whether Nadine's ablation procedure included the experimental use of an esophageal temperature probe as part of a medical research study. Swerdlow argued our opinion in *Secarea I* decided all medical experimentation claims against Plaintiff and therefore discovery on this issue was irrelevant. The trial court agreed and granted Swerdlow's motion.

The UCLA Defendants moved for summary judgment on Plaintiff's lack of informed consent claim, asserting they adequately disclosed the potential for the atrio-esophageal fistula complication. Irvine Regional, Schwartz, and Swartzentruber moved for summary judgment on the ground Plaintiff's sole remaining claim for wrongful death failed because the care and treatment they provided Nadine met the applicable standard of care and did not cause her death. In August 2010, the trial court

9

denied all of these summary judgment motions except Schwartz's motion because Plaintiff presented sufficient evidence to establish a triable issue on (1) whether the UCLA Defendants disclosed the potential for the atrio-esophageal fistula complication, and (2) whether Irvine Regional and Swartzentruber satisfied the applicable standard of care. The court granted Schwartz's motion because the expert declaration Plaintiff submitted failed to create a triable issue on whether Schwartz's care and treatment caused Nadine's death. The court found the declaration by Plaintiff's expert inadequate because it merely stated Schwartz "could have changed [Nadine's] outcome" if he had complied with the applicable standard of care. Shortly after the trial court granted Schwartz's motion, Plaintiff filed a new trial motion to challenge that ruling, which the court denied on October 22, 2010.

On August 11, 2010, Plaintiff moved to continue trial, arguing he needed an additional six months to properly prepare his case and hire needed experts because his attorney, Rockett, engaged in positive misconduct and abandoned him by failing to conduct necessary discovery, failing to hire appropriate experts, and then withdrawing as Plaintiff's counsel. The trial court heard the motion on September 13, 2010, seven days before the scheduled trial date. The court denied the motion based on its finding (1) Rockett did not engage in positive misconduct; (2) when the court granted Rockett's motion to be relieved it warned Plaintiff to act diligently in hiring new counsel or otherwise prepare the case for trial; (3) Plaintiff did not seek relief from the court when he first discovered a problem with the experts identified in the expert designation Rockett served; (4) Plaintiff knew how important experts were to his case; and (5) Plaintiff failed to seek any relief regarding the trial date or other litigation deadlines until one week before trial.

After the court denied the continuance motion, Plaintiff informed the court he would not proceed with his case because he lacked the necessary experts and evidence. Plaintiff explained it would be an "idle act" for the parties to appear on the

10

trial date based on Plaintiff's inability to proceed and therefore the court should dismiss the action so he could appeal. The court explained it would not dismiss the action on the court's motion, but would grant Plaintiff's request to dismiss. Plaintiff, however, declined to move for dismissal.

On September 15, 2010, Plaintiff filed a document entitled, "Notice of Inability to Prosecute Cause or Action." This document stated, Plaintiff "is unable to prosecute the above-entitled action. . . . Consequently, after his cause is dismissed for want of prosecution, Plaintiff will appeal to the reviewing courts for relief from the rulings which led to the current situation."

The court called the case for trial on September 20, 2010. Counsel for all Defendants announced ready for trial, but Plaintiff did not appear. The courtroom attendant informed the court Plaintiff appeared earlier, but left before the court called the case. Based on Plaintiff's earlier statement that it would be an idle act for him to appear for trial because he could not proceed, the Notice of Inability to Prosecute Cause or Action Plaintiff filed, and his failure to appear when the court called the case for trial, the court dismissed Plaintiff's case with prejudice on the ground Plaintiff abandoned it.

Plaintiff appeals from the summary judgment entered in Schwartz's favor and the judgment of dismissal entered for other Defendants.

II

DISCUSSION

A.    *The Law of the Case Doctrine Prevents Plaintiff from Rearguing Claims and Issues Decided in Secarea I*

1.    The Law of the Case Doctrine

"Under the law of the case doctrine, when an appellate court "'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress,

11

both in the lower court and upon subsequent appeal . . . .'" [Citation.] Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.' [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246 (*Barragan*); see also *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.) An earlier appellate decision becomes law of the case for all issues it explicitly decided and all issues "that were implicitly determined because they were essential to the prior decision." (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 309 (*Yu*).)

"The doctrine promotes finality by preventing relitigation of issues previously decided." (*Yu*, *supra*, 103 Cal.App.4th at p. 309.) Indeed, "[t]he primary purpose served by the law-of-the-case rule is one of judicial economy. Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding." (*Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435 (*Searle*).)

"As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact." (*Barragan*, *supra*, 32 Cal.4th at p. 246.) The sufficiency of the evidence, however, is a question of law subject to the doctrine when the appellate court determines the evidence offered is insufficient to justify a finding as a matter of law. (*Ibid*.; see also *People v. Cooper* (2007) 149 Cal.App.4th 500, 526 (*Cooper*) ["'[A]n appellate court's determination "that the evidence is insufficient to justify a finding or a judgment is necessarily a decision upon a question of law"'''].)

"The doctrine is one of procedure rather than jurisdiction, and can be disregarded in exceptional circumstances. [Citation.] 'The principal ground for making an exception to the doctrine of law of the case is an intervening or contemporaneous change in the law.' [Citation.] The doctrine can also be disregarded to avoid an unjust decision. [Citation.] For the 'unjust decision' exception to apply, 'there must at least be

12

demonstrated a manifest misapplication of existing principles resulting in substantial injustice.' [Citation.]" (*Yu*, *supra*, 103 Cal.App.4th at p. 309; *Searle*, *supra*, 38 Cal.3d at p. 435 ["Though we have recognized that the rule will be disregarded when necessary to avoid an 'unjust decision' [citation], that exception must rest on 'a manifest misapplication of existing principles resulting in substantial injustice' and not on mere disagreement with the prior appellate determination"].)

   2. *Secarea I* Decided Plaintiff's Medical Experimentation Claims

   In *Secarea I*, we decided that all of Plaintiff's claims based on medical experimentation failed because "the UCLA defendants established the specific procedure performed on Nadine, including the use of an[] esophageal temperature probe, was not 'experimental or investigational' at the time of the operation [and] Plaintiff provided no competent evidence rebutting this point to the trial court." (*Secarea I*, at p. 22.) Plaintiff now asks us to "reconsider the medical experimental issue," but the law of the case doctrine prevents us from doing so because Plaintiff failed to establish an applicable exception.

   Our conclusion the procedure performed on Nadine was not experimental or investigational was necessary to our decision in *Secarea I* because we relied on that conclusion to affirm the trial court's ruling sustaining the UCLA Defendants' demurrers to Plaintiff's medical experimentation claims. We concluded the medical experimentation claims failed as a matter of law because the evidence presented on the summary judgment motions established there was no medical experimentation performed on Nadine and therefore any error in the trial court's decision to sustain demurrers to those claims was harmless. As explained above, a determination regarding the sufficiency of the evidence to support a particular finding is a question of law subject to the law of the case doctrine. (*Barragan*, *supra*, 32 Cal.4th at p. 246; *Cooper*, *supra*, 149 Cal.App.4th at p. 526.) Accordingly, the doctrine prevents Plaintiff from relitigating

13

the medical experimentation issue unless he establishes an exception to that doctrine. (*Yu*, *supra*, 103 Cal.App.4th at p. 309.)

Plaintiff makes no attempt to establish an exception to the law of the case doctrine and, in fact, fails to even mention the doctrine in his brief.[5] Instead, Plaintiff argues we should reconsider the medical experimentation issue "per the manifest injustice and public interest exceptions to res judicata." But those "exceptions" do not apply here because Plaintiff's reconsideration request is barred by the law of the case doctrine, not res judicata.

Plaintiff also argues substantive and procedural due process require us to reconsider the medical experimentation issue. According to Plaintiff, both the trial court and this court deprived him of substantive and procedural due process by requiring expert medical testimony on the standard of care to establish the medical experimentation claims. Plaintiff contends a medical experimentation claim cannot be established through evidence of the standard of care because any medical treatment that included medical experimentation is necessarily not "standard." Plaintiff's argument misses the mark.

*Secarea I* concluded Plaintiff's medical experimentation claims failed because the evidence showed the procedure performed on Nadine was neither experimental nor investigational. Accordingly, the essential factual predicate upon which Plaintiff based his claims was missing. During the trial court proceeding leading up to *Secarea I*, Plaintiff had the opportunity to conduct discovery and investigation on his medical experimentation claims and to present any supporting evidence. As *Secarea I* shows, Plaintiff failed to present any evidence to create a triable issue on whether Nadine's ablation procedure was experimental or investigational, and Plaintiff does not contend he was denied the opportunity to pursue his medical experimentation claims.

_____

[5] Plaintiff also failed to file a reply brief after Defendants filed their briefs arguing the law of the case doctrine prevented reconsideration of Plaintiff's medical experimentation claims.

14

Neither substantive nor procedural due process requires that we provide Plaintiff with a second opportunity to litigate his medical experimentation claims. (See *Yu*, *supra*, 103 Cal.App.4th at p. 312 ["'Fortunately, fundamental rules of appellate review are specifically designed to preclude the possibility of this type of multiple litigation of the same issue.' [Citation.] Litigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court"].)

3.     *Secarea I* Decided Plaintiff's "Battery – Ghost Surgery" Claim

Plaintiff's second amended complaint asserted a claim for "Battery – Ghost Surgery" based on the allegation Nadine never consented to Cesario performing any part of her catheter ablation. According to Plaintiff's pleading, Nadine consented only to Swerdlow and Shivkumar performing her procedure. In *Secarea I*, we affirmed the trial court's decision sustaining the UCLA Defendants' demurrer to this cause of action because the evidence presented on summary judgment showed the doctors performed Nadine's procedure in a competent and appropriate manner and therefore she did not suffer any harm or injury from Cesario's participation in the operation. Accordingly, we concluded any error in the trial court's ruling sustaining the UCLA Defendants' demurrer to this cause of action was harmless. Plaintiff asks us to "reconsider" this ruling, but the law of the case doctrine prevents us from doing so because Plaintiff failed to show an exception to the doctrine applies.

As with the medical experimentation issue, our conclusion Cesario's participation in Nadine's ablation procedure caused her no harm was necessary to our decision in *Secarea I* because we relied on that conclusion as the sole basis for affirming the trial court's ruling on the UCLA Defendants' demurrers to Plaintiff's "Battery – Ghost Surgery" claim. Accordingly, we may not "reconsider" that decision unless Plaintiff establishes an exception to the law of the case doctrine.

15

Plaintiff again makes no attempt to address the law of the case doctrine, but instead relies on inapplicable "exceptions to res judicata" and argues substantive and procedural due process supports his request. According to Plaintiff, "[t]he right to bodily integrity has long been recognized as a fundamental substantive right protected by the Constitution" and therefore we may reconsider this claim. Plaintiff, however, fails to explain how the claim's subject matter — even if entitled to constitutional protection — allows him a second opportunity to litigate a claim previously decided against him.

As explained above, the law of the case doctrine "promotes finality by preventing relitigation of issues previously decided." (*Yu*, *supra*, 103 Cal.App.4th at p. 309.) "Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal *whether such rules are right or wrong*.' [Citation.]" (*Barragan*, *supra*, 32 Cal.4th at p. 246, italic added.) Plaintiff had every opportunity to litigate this claim in *Secarea I* and fails to establish any ground for allowing him a second opportunity to pursue the claim.

B.      *The Trial Court Did Not Abuse Its Discretion in Granting Rockett's Motion to Withdraw as Plaintiff's Counsel*

With court approval, an attorney may withdraw from representing a client while an action is pending. (§ 284; Cal. Rules of Court, rule 3.1362.) California Rules of Professional Conduct, rule 3-700 establishes the grounds upon which an attorney may seek to withdraw, including (1) "The client['s] [¶] . . . [¶] conduct renders it unreasonably difficult for the member to carry out the employment effectively"; and (2) "The member believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal." (Rules Prof. Conduct, rule 3-700(C)(1)(d) & (C)(6).)

Under these rules, a trial court may permit an attorney to withdraw based on a "personality clash" between the attorney and client that leads to a breakdown in the attorney-client relationship. (*Estate of Falco* (1987) 188 Cal.App.3d 1004, 1014

16

(*Falco*).) It is irrelevant whether the attorney or the client caused the breakdown; in deciding whether to permit an attorney's withdrawal, the relevant consideration is the effect the breakdown would have on the client's legal representation. (*Ibid*.) Although a trial court may not simply "'rubber stamp'" an attorney's request to withdraw based on a claimed breakdown in the attorney-client relationship, the court may accept the attorney's good faith representations unless the court has reason to doubt the attorney's sincerity. (*Aceves v. Superior Court* (1996) 51 Cal.App.4th 584, 592, 594.) "Regardless of how others might react, only the trial lawyer can realistically appraise whether the conflict may have an impact on the quality of the representation . . . ." (See *id*. at p. 594.)

"The determination whether to grant or deny a motion to withdraw as counsel lies within the sound discretion of the trial court." (*Manfredi & Levine v. Superior Court* (1998) 66 Cal.App.4th 1128, 1133.) We review the trial court's decision under the differential abuse of discretion standard. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 8:85, p. 8-40 ["Discretionary trial court rulings are reviewed under the 'abuse of discretion' standard"].) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" [Citations.]" (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682.)

Here, Rockett explained he moved to withdraw as counsel because Plaintiff "has refused to follow the advice of counsel and has engaged in a course of conduct that clearly indicates a breakdown in communication and thus a breakdown in the attorney-client relationship." Rockett's supporting declaration did not provide further details because the Rules of Court require that an attorney state the grounds for withdrawing "in general terms and without compromising the confidentiality of the attorney-client relationship . . . ." (Cal. Rules of Court, rule 3.1362(c).)

17

Plaintiff urged the trial court to deny Rockett's motion to withdraw on the curious ground that Rockett bore responsibility for their fractured relationship because he mishandled Plaintiff's case. In support, Plaintiff cited a number of Rockett's alleged mistakes, including (1) failing to properly oppose the summary judgment motions leading to *Secarea I*; (2) improperly billing Plaintiff for a paralegal's work under the guise she was an expert; and (3) asking Plaintiff to dismiss the action instead of seeking leave to reallege the medical experimentation issues.

Ironically, these purported mistakes provide sufficient grounds to support the trial court's ruling because they show a clear breakdown in the attorney-client relationship based on a difference of opinion on how to proceed. As explained above, it does not matter who caused the breakdown in the attorney-client relationship; the relevant consideration is the effect the breakdown would have on the client's legal representation. (*Falco*, *supra*, 188 Cal.App.3d at p. 1014.)

Plaintiff now contends the trial court erred in granting Rockett's motion because Rockett served an outdated expert designation that (1) failed to designate appropriate experts, and (2) designated experts who had not agreed to testify after *Secarea I*. According to Plaintiff, Rockett's failure to designate proper experts prejudiced Plaintiff's case and prevented Rockett from withdrawing. We disagree.

Rules of Professional Conduct, rule 3-700(A)(2), states an attorney shall not withdraw from representing a client until he takes "reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, [providing the client with a copy of his or her file], and complying with applicable laws and rules." Here, any prejudice to Plaintiff arose from Rockett's purported failure to hire and designate appropriate experts, not from Rockett's withdrawal.

Rockett notified Plaintiff he was withdrawing and took reasonable steps to avoid any harm caused by his withdraw. Specifically, he notified Plaintiff of his intent to

18

withdraw nearly six months before the trial date and just a few weeks after their disagreement over the continued viability of Plaintiff's case. Rockett provided Plaintiff with a calendar of all applicable deadlines and a copy of his file. When the court granted the motion a little more than four months before the trial date, it warned Plaintiff it was not inclined to continue the trial date, but did not foreclose the possibility of continuing the trial if Plaintiff acted promptly to hire new counsel or otherwise prepare for trial. Moreover, the disagreement between Rockett and Plaintiff over the retention of experts provides another example of a breakdown in the attorney-client relationship supporting Rockett's withdrawal.

C.   *The Trial Court Did Not Abuse Its Discretion in Granting Swerdlow's Motion for Protective Order*

The Civil Discovery Act (§ 2016.010 et seq.) authorizes a trial court to "make any order that justice requires to protect any party or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. (See, e.g., §§ 2030.090, subd. (b) [interrogatories], 2031.060, subd. (b) [inspection demands].) Upon a showing of good cause, the court may protect a party from the obligation to respond to a specific discovery request. (See, e.g., §§ 2030.090, subd. (b)(1) [interrogatories], 2031.060, subd. (b)(1) [inspection demands].)

The party seeking a protective order bears the burden to show good cause for the requested order. (*Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 255.) We may reverse the trial court's decision to issue a protective order only upon a showing the court abused its discretion. (*Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1286-1287; see also *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186 (*John B.*).)

Here, Swerdlow sought a protective order relieving him from the obligation to respond to interrogatories, inspection demands, or any other discovery Plaintiff sought on whether Nadine's ablation procedure included the experimental use of an esophageal

19

temperature probe as part of a medical research study.[6]  The trial court granted the motion, finding any discovery regarding medical experimentation was irrelevant after *Secarea I*.  The court explained *Secarea I* finally decided all medical experimentation claims against Plaintiff and therefore those claims were not at issue on remand.  We find no abuse of discretion in the trial court's ruling.

The Civil Discovery Act allows a party to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.  Discovery may relate to the claim or defense of the party seeking discovery or of any other party to the action."  (§ 2017.010; *John B.*, *supra*, 38 Cal.4th at p. 1186.)  A party may obtain a protective order for discovery regarding issues that fail to meet this relevancy standard and therefore are unduly burdensome and oppressive.  (See *Estevez v. Superior Court* (1994) 22 Cal.App.4th 423, 431.)

As explained above, *Secarea I* decided all medical experimentation claims against Plaintiff and the law of the case doctrine prevented Plaintiff from continuing to pursue those claims on remand.  After *Secarea I*, the only claim remaining against Swerdlow and the other UCLA Defendants was the second cause of action for lack of informed consent.  The trial court correctly concluded this was the only claim on which Plaintiff could seek discovery.  Although discovery is typically allowed on both potential and actual issues in a case (*National Steel Products Co. v. Superior Court* (1985)

---

6        Plaintiff suggests Swerdlow waived any objection to discovery regarding medical experimentation because he served discovery on that topic before Plaintiff did. Plaintiff is mistaken.  Plaintiff served his discovery on April 5, 2010, while Swerdlow served his discovery on April 8, 2010.  Moreover, Swerdlow's discovery was simply a handful of contention interrogatories seeking the basis for Plaintiff's medical experimentation claims and therefore did not waive Swerdlow's right to seek a protective order.

20

164 Cal.App.3d 476, 492; *Union Mut. Life Ins. Co. v. Superior Court* (1978) 80 Cal.App.3d 1, 10), any issues regarding medical experimentation were neither actual nor potential issues after *Secarea I* because our decision finally determined the issue.

Plaintiff argues medical experimentation is relevant to the lack of informed consent claim. In his view, the UCLA Defendants' failure to inform Nadine that her ablation procedure would include the experimental use of an esophageal temperature probe shows Nadine's consent to the procedure was invalid. *Secarea I*, however, precludes this theory because it determined "the specific procedure performed on Nadine, including the use of an[] esophageal temperature probe, was not 'experimental or investigational' at the time of the operation." (*Secarea I*, at p. 22.)

Finally, Plaintiff contends that "new facts" he discovered after *Secarea I* allow him to continue pursuing the medical experimentation issue. He is mistaken. As explained above, the law of the case doctrine prevented Plaintiff from relitigating any medical experimentation issue because *Secarea I* conclusively decided all medical experimentation issues against Plaintiff. Whether Plaintiff discovered new facts after *Secarea I* does not allow him to avoid the law of the case doctrine's preclusive effect.[7] (See *Yu*, *supra*, 103 Cal.App.4th at p. 312.)

D.      *The Trial Court Properly Granted Schwartz's Summary Judgment Motion*

1.      Governing Summary Judgment Standards

Summary judgment is properly granted if there is no triable issue on any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 847 (*Eriksson*).) A defendant moving for summary judgment bears the initial burden of presenting facts to

---

[7]      We also note Plaintiff provided no explanation why the new facts he discovered could not have been discovered and presented during the trial court proceedings that lead up to *Secarea I*.

21

negate an essential element of the plaintiff's cause of action or to show there is a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 169 (*Teselle*).) Where the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant seeking summary judgment must present evidence that would preclude a reasonable trier of fact from finding it was more likely than not that the material fact was true. (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304 (*Johnson*).)

Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing triable issues exist on one or more material facts. (§ 437c, subd. (p)(2); *Teselle*, *supra*, 173 Cal.App.4th at pp. 168-169.) A triable issue of material fact exists "'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145 (*Dollinger*).)

We review de novo a trial court's ruling on a summary judgment motion. (*Eriksson*, *supra*, 191 Cal.App.4th at p. 848.) "'[I]n practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment.' [Citation.] 'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.' [Citation.] . . . The sole question properly before us on review of the summary judgment is whether the judge reached the right *result* . . . whatever path he might have taken to get there, and we decide that question independently of the trial court. [Citation.]" (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694, original italics, fn. omitted; *Dollinger*, *supra*,

22

199 Cal.App.4th at p. 1144 ["the reviewing court '. . . reviews the trial court's ruling, not its rationale'"].)

       2.     Plaintiff Failed to Establish a Triable Issue of Fact

Following *Secarea I*, the sole remaining claim against Schwartz was the first cause of action for wrongful death. "Wrongful death is a statutorily created cause of action for pecuniary loss brought by heirs against a person who causes the death of another by a wrongful act or neglect." (*Jacoves*, *supra*, 9 Cal.App.4th at p. 105; see also § 377.60; *Corder*, *supra*, 41 Cal.4th at p. 651.) Plaintiff based his wrongful death claim against Schwartz on medical negligence. Specifically, he alleged Schwartz "failed to assemble the information and data needed to correctly diagnose and treat NADINE's critical condition." "'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' [Citation]" (*Chakalis v. Elevator Solutions, Inc.* (2012) 205 Cal.App.4th 1557, 1571 (*Chakalis*).)

Schwartz moved for summary judgment on the following grounds: (1) Plaintiff could not establish the breach of duty element because the care and treatment Schwartz provided Nadine met the applicable standard of care; and (2) Plaintiff could not establish the causation element because nothing Schwartz did caused Nadine's death. In the medical malpractice context, expert testimony is required to either prove or negate both of these elements. (*Johnson*, *supra*, 143 Cal.App.4th at p. 305 ["Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' unless the negligence is obvious to a layperson"]; *Chakalis*, *supra*, 205 Cal.App.4th at p. 1572

[""""The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony""""].)

To support his motion, Schwartz submitted a declaration by James D. Leo, M.D.  Based on his review of Nadine's medical records, Leo opined that Schwartz's care and treatment of Nadine "was appropriate and within the standard of care."  Leo further opined that "to a reasonable degree of medical probability . . . nothing . . . Schwartz . . . did or failed to do caused any injury to [Nadine] or caused her subsequent demise."  Leo's declaration satisfied Schwartz's initial burden and shifted the burden to Plaintiff to establish a triable issue of fact on both the breach of duty *and* causation elements.  (See *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 [""""California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases.  When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence""""].)

In opposition to Schwartz's motion Plaintiff submitted a declaration by Joseph A. Hardwick, M.D.  Hardwick identified several ways he believed Schwartz's care and treatment of Nadine fell below the applicable standard of care.  With respect to the causation element, Hardwick opined as follows:  "[T]o a reasonable degree of medical certainty, . . . had Dr. Schwartz complied with the standard of care as articulated above, Dr. Schwartz would have recognized and diagnosed that Mrs. Secarea's symptoms and findings were consistent with atrio-esophageal fistula.  That identified, and if properly treated, *could have changed her outcome* and would not have been fatal."  (Italics added.)

As the trial court found, Hardwick's declaration established triable issues on whether Schwartz's care and treatment satisfied the standard of care, but it failed to establish a triable issue on causation because the italicized language establishes only a

24

possibility, not a probability, that Nadine would not have died if Schwartz had provided her proper care and treatment. In the medical malpractice context, it is well settled that "'causation must be proven within a reasonable medical probability based [on] competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical "probability" and a medical "possibility" needs little discussion. There can be many possible "causes," indeed, an infinite number of circumstances [that] can produce an injury or disease. A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, *it becomes more likely than not that the injury was a result of its action*. This is the outer limit of inference upon which an issue may be submitted to the jury. [Citation.]' [Citations.]" (*Jennings v. Palomar Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118, original italics (*Jennings*).)

"[P]roffering an expert opinion that there is some theoretical possibility the negligent act *could have been* a cause-in-fact of a particular injury is insufficient to establish causation." (*Jennings*, *supra*, 114 Cal.App.4th at p. 1118, original italics; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 775-776 [expert testimony expressing a "'mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, *it becomes the duty of the court to direct a verdict for the defendant*'" (original italics)].) Hardwick's declaration that Schwartz "could have changed [Nadine's] outcome" if his care and treatment met the standard of care fails to make it more probable than not that Schwartz caused Nadine's death, and therefore Hardwick's declaration fails to create a triable issue on causation.

Plaintiff contends the word "could" in Hardwick's declaration is a typographical error, and his declaration creates a triable issue on causation if the court reads "could" as "would." The record, however, does not support Plaintiff's contention because this speculative language on causation is not an isolated statement appearing

25

only in Hardwick's declaration. Rather, the statement Schwartz "could have changed [Nadine's] outcome" appears throughout Plaintiff's trial court opposition papers, including his memorandum of points and authorities and his opposing separate statement. Moreover, Plaintiff offers no evidence to support his contention that this language is merely a typographical error. For example, Plaintiff offers no supplemental declaration from Hardwick explaining why the declaration fails to state what Hardwick allegedly meant. The declaration Hardwick submitted in opposition to Swartzentruber's summary judgment motion does not contain this same inadequate language. Rather, that declaration clearly states Nadine's "outcome would not have been fatal" if Swartzentruber satisfied the governing standard of care. Nothing in the record supports the conclusion the difference between the two declarations was unintentional.

Citing *Hanson v. Grode* (1999) 76 Cal.App.4th 601, Plaintiff also argues Hardwick's declaration is merely "obtuse" on the causation element and establishes a triable issue because Plaintiff is entitled to all favorable inferences that may reasonably be derived from Hardwick's declaration. (*Id*. at pp. 607-608.) *Hanson* does not require us to reverse the trial court's decision. *Hanson* was a medical malpractice case in which the plaintiff's expert declaration in opposition to a summary judgment motion lacked language stating the defendant's failure to comply with the standard of care caused the plaintiff's injuries within a reasonable medical probability. The plaintiff's expert declaration, however, stated "'the nerves were injured during the subject surgical procedure'" and "'the pre-operative, operative and post-operative care provided by defendants . . . to [the plaintiff] contributed to and was a substantial factor or cause in bringing about [the plaintiff's] current injuries.'" (*Id*. at p. 606.) The declaration did not include speculative language similar to the "could have changed [Nadine's] outcome" language that renders Hardwick's declaration inadequate. Accordingly, *Hanson* is inapposite.

26

Finally, Plaintiff contends the trial court erred in granting Schwartz's summary judgment motion because the motion failed to address all liability theories Plaintiff asserted against Schwartz. According to Plaintiff, his wrongful death cause of action also included a claim that Schwartz failed to obtain Nadine's informed consent before admitting her to Irvine Regional and transferring her to the telemetry unit. This argument fails because Plaintiff's second amended complaint did not allege a lack of informed consent claim against Schwartz.

A plaintiff may not argue a new, unpleaded issue to defeat an otherwise proper summary judgment motion. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648 (*Raiders*) ["A 'plaintiff cannot bring up new, unpleaded issues in his or her opposing papers'"]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 90 (*Knapp*) [same].) "It is well established that the pleadings determine the scope of relevant issues on a summary judgment motion" (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74), and a defendant is "entitled to rely on the scope of plaintiffs' operative pleading in seeking a summary disposition of the action" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 509 (*Shugart*)).

Plaintiff's wrongful death cause of action includes the conclusory allegation that "defendants, and each of them, so negligently, carelessly, recklessly, wantonly, and *without consent*, treated, experimented upon, misrepresented, provided such deficient care, monitoring, examination, diagnosis and other medical services so as to directly and proximately cause death to NADINE." (Italics added.) All specific allegations regarding lack of informed consent, however, relate solely to the UCLA Defendants and Nadine's ablation procedure. Indeed, Plaintiff's detailed, 92-page second amended complaint includes numerous allegations and a separate cause of action against the UCLA Defendants for their alleged failure to obtain Nadine's informed consent to the ablation procedure. There are no specific allegations against Schwartz regarding lack of

27

informed consent. Instead, all specific allegations against Schwartz allege he failed to gather all necessary information to correctly diagnose and treat Nadine's atrio-esophageal fistula.

These specific allegations excluding Schwartz from the claim for lack of informed consent and describing the alleged acts and omissions giving rise to the claim against him control over the generalized allegation that all defendants acted without consent. (*Schugart*, *supra*, 199 Cal.App.4th at pp. 508-509; 4 Witkin, Cal. Procedure (5th ed. 2008) Pleadings, § 450, pp. 583-584.) To oppose Schwartz's summary judgment motion based on a lack of informed consent claim, Plaintiff should have sought leave to amend his complaint before the hearing on Schwartz's motion. (*Raiders*, *supra*, 131 Cal.App.4th at p. 648; *Knapp*, *supra*, 123 Cal.App.4th at p. 90.) Plaintiff cites nothing that would have notified Schwartz Plaintiff was pursuing a lack of informed consent claim against him. Consequently, Plaintiff cannot rely on that theory to defeat Schwartz's summary judgment motion.

E.      *The Trial Court Properly Denied Plaintiff's New Trial Motion*

Plaintiff moved for a new trial on his claim against Schwartz, arguing the trial court erred in granting Schwartz summary judgment because the court misapplied the law relating to informed consent. Schwartz opposed the motion, arguing it was procedurally deficient because Plaintiff filed the motion before the court entered a signed judgment and the motion failed on the merits because the court properly granted Schwartz summary judgment. The court denied the motion, finding it was procedurally defective and nonetheless failed on the merits.

We need not dwell on this aspect of Plaintiff's appeal because, although he argues his motion was not procedurally defective, he fails to address the substantive merits of his new trial motion. Plaintiff cites section 657, subdivision (7), as the legal grounds for the motion. That subdivision allows a court to grant a new trial based on an

28

"[e]rror in law, occurring at the trial and excepted to by the party making the application." Plaintiff, however, fails to show the trial court committed an error in law by granting Schwartz's summary judgment motion.

Plaintiff offers the conclusion he was entitled to a new trial on his informed consent claim against Schwartz, but, as explained above, Plaintiff's pleading failed to allege a lack of informed consent claim against him. Accordingly, the trial court did not commit an error in law by granting Schwartz's summary judgment motion and properly denied Plaintiff's new trial motion.

F.    *The Trial Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion to Continue Trial*

"To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a).) Trial continuances are disfavored and may be granted only on an affirmative showing of good cause requiring the continuance. (Cal. Rules of Court, rule 3.1332(c); *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1127 (*Thurman*); *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 (*Falcone & Fyke*).)

"'The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record.' [Citation.]" (*Thurman*, *supra*, 203 Cal.App.4th at p. 1126; see also *Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 823.)

Seven days before trial, Plaintiff moved for a six-month trial continuance to allow him time to hire experts and new counsel and to complete discovery after Rockett withdrew as Plaintiff's counsel. According to Plaintiff, Rockett mishandled Plaintiff's

29

case by failing to conduct discovery and designate appropriate experts, and Rockett's withdrawal left Plaintiff with insufficient time before trial to hire new counsel, correct Rockett's many mistakes, and oppose the summary judgment and discovery motions Defendants filed. Plaintiff contends Rockett's inadequate representation amounted to positive misconduct that required the trial court to grant Plaintiff's motion to continue.[8]

The trial court denied Plaintiff's motion, finding any neglect or mistakes by Rockett in representing Plaintiff did not amount to positive misconduct. The court explained its experience with the case showed Rockett actively participated in representing Plaintiff by conducting depositions, obtaining all medical records necessary to prosecute the action, appearing at status conferences, helping the court develop a litigation schedule, and serving an expert designation. The court acknowledged Plaintiff's argument that the expert designation Rockett served was identical to the designation he served before *Secarea I*, Rockett did not confirm the experts' continued availability or willingness to testify, and Rockett failed to designate experts on some essential topics. The court nonetheless found any failings by Rockett did not amount to positive misconduct that required a trial continuance. We discern no abuse of discretion in the trial court's ruling.

---

[8] California Rules of Court, rule 3.1332(c) identifies the following "[c]ircumstances that may indicate good cause" for a trial continuance: (1) the unavailability of an essential lay or expert witness, party, or trial counsel "because of death, illness, or other excusable circumstances"; (2) "substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice"; (3) "[joinder] of a new party if [¶] (a) [t]he new party has not had a reasonable opportunity to conduct discovery and prepare for trial; or [¶] [t]he other parties have not had a reasonable opportunity to conduct discovery and prepare for trial in regard to the new party's involvement in the case"; (4) "[a] party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts"; and (5) "[a] significant, unanticipated change in the status of the case as a result of which the case is not ready for trial." Plaintiff does not argue any of these circumstances supported his continuance motion.

An attorney's negligence is generally imputed to his client and may *not* be offered as a basis for relief from an order or judgment caused by the attorney's negligence. "The client's redress for inexcusable neglect by counsel is, of course, an action for malpractice." (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 (*Carroll*).) An exception exists where "the attorney's neglect is of that extreme degree amounting to *positive misconduct* . . . [that,] in effect, *obliterates the existence of the attorney-client relationship*" and thereby prevents the attorney's neglect from being imputed to the client. (*Ibid.*, original italics.)

For this exception to apply, there must be "a total failure on the part of counsel to represent the client" sufficient to show "it would have been unconscionable to apply the general rule charging the client with the attorney's neglect." (*Carroll*, *supra*, 32 Cal.3d at p. 900; see also *People v. One Parcel of Land* (1991) 235 Cal.App.3d 579, 584.) In *Carroll*, the Supreme Court emphasized the positive misconduct exception "should be narrowly applied, lest negligent attorneys find that the simplest way to gain the twin goals of rescuing clients from defaults and themselves from malpractice liability, is to rise to ever greater heights of incompetence and professional irresponsibility while, nonetheless, maintaining a beatific attorney-client relationship." (*Ibid.*)

The record here does not show Rockett's representation was a total failure making it unconscionable to impute Rockett's alleged malfeasance to Plaintiff. As explained above, Rockett and Plaintiff disagreed on how to proceed with this action, but Rockett continued to represent Plaintiff until the trial court granted his withdrawal motion. When this case was remanded after *Secarea I*, Rockett participated in discovery, appeared at court hearings, and communicated with both Plaintiff and opposing counsel. Plaintiff clearly is not satisfied with the quality of Rockett's representation, but even gross mishandling of routine discovery and other matters does not amount to positive misconduct sufficient to prevent the court from imputing the attorney's negligence to the

31

client.  (*Carroll*, *supra*, 32 Cal.3d at p. 900.)  There must be a total failure to represent the client and the record does not compel that conclusion.

California Rules of Court, rule 3.1332(d) identifies several factors a trial court should consider in ruling on a motion to continue trial, including (1) "[t]the proximity of the trial date"; (2) "[w]hether there was any previous continuance, extension of time, or delay of trial due to any party"; (3) "[t]he length of the continuance requested"; (4) any prejudice the continuance will cause to the parties or witnesses; (5) the court's calendar and the impact of a continuance on other cases; (6) "[w]hether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance"; and (7) any other relevant considerations. Here, the trial court considered each of these factors on the record in reaching its decision to deny Plaintiff's motion.

The court explained the case was approximately five years old when it was remanded after *Secarea I* and therefore the court took an active role in working with counsel to establish an eight-month litigation schedule.  Although Rockett withdrew from representing Plaintiff shortly after the court established that schedule, Rockett gave Plaintiff notice of his intent to withdraw six months before the trial date and the court granted the motion to withdraw more than four months before that date.  When the court granted Rockett's motion, it warned Plaintiff not to delay hiring new counsel so the case would stay on schedule.

The court further explained Plaintiff knew he needed expert witnesses because he had actively participated throughout the litigation, including drafting an opposition to the summary judgment motions addressed in *Secarea I*, working with a consultant to obtain experts to oppose those motions, and drafting the appellate briefs for *Secarea I*.  The court found Plaintiff learned of potential problems with the expert designation not later than the hearing on Rockett's motion to withdraw, but failed to address those problems until four months later when he sought a trial continuance seven

32

days before the trial date. Instead of preparing to try the case on the limited issues that remained after *Secarea I*, the trial court found Plaintiff spent time trying to revive the medical experimentation claims decided against him in *Secarea I*. Finally, the court explained the requested continuance would prejudice Defendants because the case was old.

We cannot conclude the trial court abused its discretion on the current record. Plaintiff made the strategic decision to continue pursuing the medical experimentation claims we decided against him in *Secarea I* rather than prepare the remaining claims for trial. Although Plaintiff acknowledged the vital importance of experts to his case, his motion to continue failed to show he made any efforts to hire experts or address any shortcomings in the expert designation Rockett served. Indeed, Plaintiff failed to identify a single expert or attorney he sought to hire after Rockett withdrew. Plaintiff contends the trial court made clear when it granted Rockett's motion to withdraw that it would not continue the trial, but that is not what the court said. The court explained it was not inclined to continue the trial at that time and it was important Plaintiff act diligently to hire new counsel to review the litigation schedule. Moreover, the record does not support Plaintiff's contention the court told him he could not correct any deficiencies in the expert declaration. Although we acknowledge Plaintiff needed time to oppose summary judgment and discovery motions after Rockett withdrew, he failed to present evidence showing he lacked the opportunity to at least attempt to hire new counsel and experts.

G.    *The Trial Court Properly Dismissed Plaintiff's Action*

Section 581, subdivision (d), states "the court shall dismiss the complaint, or any cause of action asserted in it, in its entirety or as to any defendant, with prejudice, when upon the trial and before the final submission of the case, the plaintiff abandons it." That subdivision "provide[s] for a voluntary dismissal which must be predicated upon a

33

clear, unequivocal and express intent to abandon an action. Such intent must be demonstrated to the court by way of a motion to dismiss, stipulation of the parties or *some other form of express intent on the record*." (*Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.* (1970) 10 Cal.App.3d 206, 213, italics added.) A plaintiff's statement to the court that he or she is unable to proceed with trial based on an evidentiary or other ruling is a clear, unequivocal and express statement of intent to abandon an action permitting dismissal under section 581, subdivision (d). (*Miranda v. National Emergency Services, Inc.* (1995) 35 Cal.App.4th 894, 898 (*Miranda*); *Richaud v. Jennings* (1993) 16 Cal.App.4th 81, 86 (*Richaud*).)

Here, at the hearing on the motion to continue, Plaintiff repeatedly told the court he would not proceed with the action based on the court's decision denying his continuance motion, and appearing for trial would be an "idle act" because he lacked the expert witnesses necessary to prove his case. Plaintiff further told the court he expected it to dismiss his action after he told the court he could not proceed, but he would not dismiss on his own motion because he feared doing so would waive his right to appeal. The court refused to dismiss the action and explained it expected to see all parties on the trial date. Two days later Plaintiff filed a "Notice of Inability to Prosecute Cause or Action," again declaring he could not proceed with the action and expected the court to dismiss the case "for want of prosecution."

Based on Plaintiff's repeated statements of his intent and expectations, the court dismissed the case under section 581, subdivision (d), when Plaintiff failed to appear for trial.[9] Plaintiff now contends the court erred in dismissing his action, but we

---

[9] The court also dismissed Plaintiff's action under section 581, subdivision (b)(1), which states, "An action may be dismissed in any of the following instances: [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial, upon payment of the costs, if any." The court found Plaintiff's Notice of Inability to Prosecute Cause or Action was a request to dismiss the action. Plaintiff does not challenge the propriety of the dismissal under

34

cannot agree.  The foregoing oral and written statements by Plaintiff constitute a clear, unequivocal, and express statement of Plaintiff's intent to abandon this action based on the court's refusal to continue trial.  Indeed, the trial court did exactly what Plaintiff asked it to do:  dismiss the action so he could appeal and challenge the court's ruling on the motion to continue and other pretrial matters.[10]  Plaintiff points to nothing in the record establishing his intent to proceed with the trial at the time the court dismissed his action.  Indeed, Plaintiff does not even claim he intended to proceed with the action.

Plaintiff contends the trial court deprived him of due process because it dismissed the action during a hearing at which he was not present.  According to Plaintiff, he did not appear for trial because the trial was taken off calendar.  But the court's minute order from the trial date says nothing about the trial being off calendar and all other parties appeared and answered ready for trial.  There is no notice, order, or other document in the record Plaintiff designated showing the trial was not on the calendar.

The only "evidence" Plaintiff cites to support his contention is a statement by the courtroom attendant when the court called the case for trial and inquired whether Plaintiff was present.  The courtroom attendant stated, "He did make an appearance, your honor.  When he saw – he left when he saw it was off calendar."  The record, however, is unclear about what was allegedly off calendar.  Counsel for one defendant stated an order "apparently" took the trial date off calendar, but she thought it actually referred to a motion Plaintiff filed to vacate Schwartz's summary judgment.  Two other defense attorneys stated they received no notice the trial had been taken off calendar.  Plaintiff cites nothing in the record showing what, if anything, was taken off calendar and he

section 581, subdivision (b)(1), and therefore that subdivision provides an independent, alternative ground upon which we affirm the court's dismissal.

10      A dismissal under section 581, subdivision (d), allows a plaintiff to appeal and challenge all rulings leading up to that dismissal.  (*Miranda*, *supra*, 35 Cal.App.4th at p. 898; *Richaud*, *supra*, 16 Cal.App.4th at p. 86.)

35

provides no explanation why he left when all defense attorney remained and announced ready for trial.  As the appellant, Plaintiff bore the burden to provide an adequate record to enable us to review his contention the trial was off calendar and therefore the court could not dismiss the action.  Plaintiff's failure to provide an adequate record requires us to resolve this issue against him.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

Moreover, Plaintiff forfeited any challenge to the dismissal of his action because he failed to seek relief in the trial court through a motion to vacate the dismissal or other appropriate request for relief.  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 283, 285-286 [plaintiffs forfeited their challenge to a dismissal under section 581, subdivision (d), by failing to seek relief from the dismissal in the trial court].)  "'The forfeiture doctrine is a "well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been — but were not — raised in the trial court. [Citation.]" [Citations.]  . . .  """The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.  If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.""" [Citation.]" [Citation.]' [Citation.]" (*Id*. at pp. 285-286.)

III

DISPOSITION

The judgments are affirmed.  Defendants shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.